## WILLIAMSON-HALSELL-FRAZIER CO. v. STATE ex rel. TRADESMEN'S STATE BANK.

No. 8001—Opinion Filed March 5, 1918.

(171 Pac. 453.)

(Syllabus.)

### Evidence—Sale of Assets by Bank Commissioner—Presumption of Authority.

Where the bank commissioner took charge of an insolvent bank, and where in winding up its affairs he sold certain of its assets, it will be presumed, in the absence of an affirmative showing to the contrary, that he obtained authority for such sale from the district court or a judge thereof.

Error from District Court, Oklahoma County; E. D. Oldfield, Judge.

Action by the State of Oklahoma, on relation of the Tradesmen's State Bank, against the Williamson-Halsell-Frazier Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Blake, Boys & Shear, for plaintiff in error.

Harris & Nowlin, for defendant in error.

HARDY, J. The state, upon the relation of the Tradesmen's State Bank, brought an action in the district court of Oklahoma county to compel a transfer upon its books of certain shares of its corporate stock and the payment to relator of certain sums as accrued dividends. Plaintiff claims title to the stock through a sale thereof as collateral security to certain notes of one W. G. Hager, which, it alleged, came into its possession in due course and for value. Defendant made return that Hager denied the title of relator to the stock and had notified it not to transfer same or pay the accrued dividends thereon to relator. Hager made application to be made a party to this proceeding, which application was denied. Judgment was rendered, directing the transfer as prayed, and the payment to relator of accrued dividends, and respondent prosecutes error.

Counsel have expressly waived all assignments of error, except the assignment that the court erred in finding that relator had title to the stock and was therefore entitled to have the same transferred on the books of the company. It is the contention that relator acquired no title thereto because said notes had been executed to the Oklahoma State Bank, and the stock pledged as collateral for the payment thereof, and that the bank became insolvent and was taken in charge by the bank commissioner, who sold said notes, with the collateral attached thereto, to relator, without first having obtained authority from the district court or a judge thereof, as required by sections 302 and 304, Rev. Laws 1910. It appears that the stock was indorsed in blank by Hager, and, together with the notes for the payment of which it was pledged, passed into the possession of relator through the sale by the bank commissioner, and upon default in the payment of said notes, was sold to Frank J. Wyckoff, and by him resold to relator, who was in possession at the time the action was commenced. Upon this state of the record the court properly held that the burden of proof was upon respondent to show that relator had no title to said stock. No error being urged upon this ruling of the court, for the purpose of this case we shall assume that the burden of showing want of authority in the bank commissioner was properly placed upon defendant, and that, when possession of the Hager notes, with the stock attached thereto, was acquired by relator, and this fact was made to appear, the duty of relator to adduce evidence establishing prima facie its title to said notes was satisfied. Jones v. Wheeler, 23 Okla. 771, 101 Pac. 1112; Southwest Gen. Elec. Co. v. Riddle, 66 Okla. 202, 168 Pac. 436; Jones, Ev. § 74; 1 Daniel, Neg. Inst. § 812.

The title of relator to said notes being prima facie established, it necessarily followed that a presumption arose that relator, as the owner of the notes for the payment of

which said stock had been pledged, was authorized, under the terms of the pledge, to sell said stock upon failure to pay the notes when due. Section 266, Rev. Laws 1910; section 4513, Rev. Laws 1910; Ardmore State Bank v. Mason, 30 Okla. 568, 120 Pac. 1080, 39 L. R. A. (N. S.) 292; Dunbar v. Commercial Elec. Sup. Co., 32 Okla. 634, 123 Pac. 417. To overcome this prima facie case, defendant offered evidence to show the terms of the agreement of sale between the bank commissioner and relator, whereby relator acquired said notes with the collateral, and went no further, and contends that the sale was void because the bank commissioner had not previously obtained an order authorizing such sale from the district court or judge thereof.

With this contention we cannot agree. The bank commissioner was a state official, and in administering the affairs of the defunct bank was acting in the discharge of important duties imposed upon him by law, and his official acts were entitled to the same presumption which applies to the acts of public officials generally, which is that, in the absence of evidence to the contrary, the law presumes that such officers have properly performed their duties, and that they have complied with all the forms of law necessary to qualify them to act as they have done, and where some preceding act or pre-existing fact is necessary to the validity of an official act, the presumption in favor of the validity of the official act is presumptive proof of such preceding act or pre-existing fact, for the law will not presume that the bank commissioner or any other public official has acted in excess of his lawful authority or in an illegal manner. Southern Surety Co. v. Waits, 45 Okla. 513, 146 Pac. 431; Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213; Lusk v. Porter, 53 Okla. 294, 156 Pac. 224; Board Com'rs v. Field, 63 Okla. 80, 162 Pac. 733; 4 Wigmore, Ev. § 2534; 2 Chamberlayne, Mod. Law, Ev. § 1201; 1 Jones, Ev. § 41 et seq.; 22 A. & E. Encyc. 1267, 1269; Lawson on Presumptive Evidence. In Territory v. Sellers et al., 15 Okla. 419, 82 Pac. 575, it is said:

"The law is well settled that, in the absence of proof, it will be presumed that the official acts of a public officer were regular, and that the officer acted within the scope of his powers."

In Leedy v. Brown, Judge, et al., 27 Okla. 489, 113 Pac. 177, it was held:

"When an action is commenced in the district court in the name of the state by the Attorney General, in the absence of an affirmative showing to the contrary, he is presumed to have brought such action after having been requested by the Governor or one of the branches of the Legislature."

That the Oklahoma State Bank became insolvent, and that the bank commissioner took charge thereof and was administering its affairs, and sold said notes to relator, plainly appears, and the one element of proof lacking is that in making the sale he did not obtain an order authorizing same from the district court or judge thereof. The Oklahoma State Bank has at no time, so far as the record appears, made any objection to the sale, and has at all times acquiesced therein. Hager was not deprived of any property or other rights by the sale made by the bank commissioner, as his liability on said notes and his right to redeem his stock by payment thereof remained, and was not at any time affected.

Everything else appearing regular, and defendant attacking the title of relator to the stock in question, and basing its whole attack upon the alleged invalidity of the sale by the bank commissioner, the burden was upon it to show the lack of authority, and in the absence of such showing we will presume that such order was obtained. The defendant was deprived of no rights by the act of the bank commissioner; neither was its liability to the holder of said stock increased or diminished in the least. After the sale of the notes, the stock was still the property of Hager, subject to the lien of the holder of the notes as pledgee thereof for the payment of said notes.

When relator was selecting the loans that were to become its own absolutely, and before the purchase of the notes in question, Hager was consulted with reference thereto, and consented that the relator might purchase them, and agreed to give additional security for the payment thereof. Later, in pursuance of this agreement, he gave additional security and paid $1,500 on the notes. Being unable to make further payments, he was notified by the bank of its intention to sell the collateral, when he insisted that the stock was worth $150 per share, and should not be sold for less than $140. The stock was sold for $150 per share. It is not contended that this sale was not legally conducted, nor the price received a fair one.

Hager testified as a witness in the case, and did not deny any of the above facts. E. E. Blake, Esq., one of the attorneys for defendant in this case, was attorney for Hager at the time of the sale, and, after service of notice upon Hager by the bank of its intention to sell the stock, called upon the bank

in · the interest of his client, and said, if the stock sold for $150 that was all he asked, and that he did not think there would be any objection. The agreement with the bank commissioner was dated August 11, 1913, and the stock was sold August 14, 1914, and this action was commenced November 22, 1915. At no time prior to its commencement had Hager taken any steps to have said sale set aside, redeem the stock, or pay the notes held by relator.

Being of the opinion that the sale by the bank commissioner, under the circumstances, should be upheld, in the absence of a showing of want of authority upon his part to make the sale, the judgment is affirmed.

All the Justices concur.