CREWS et al. v. AMERICAN SURETY COMPANY OF NEW YORK.

No. 29048. March 4, 1941.

*110 P. 2d 1108.*

Albert L. McRill, of Oklahoma City, and M. F. Priebe, of Enid, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendant in error.

DAVISON, J. The plaintiffs in error instituted this action, as plaintiffs, in the district court. Demurrers to their petition, amended petition, and second amended petition were sustained in regular order.

One Charles G. Shull, a former Bank Commissioner for the State of Oklahoma, was designated a defendant in the amended petitions, in addition to American Surety Company of New York, who was surety on his official bond. The demurrers sustained to the plaintiffs' pleadings were filed on behalf of said surety company. Consequently, the term "defendant," as hereinafter used in our reference to the parties as they appeared in the trial court, will refer only to the surety company.

The plaintiffs, having elected to stand upon their second amended petition, have brought this appeal from the order of the trial court sustaining the defendant's demurrer to same and dismissing the action.

The general question presented for decision is whether or not said pleading states facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendant.

In the pleading before us, the plaintiffs pray for the recovery against Charles G. Shull of damages in the sum of $94,500 for losses totaling that amount which they are alleged to have suffered in the Farmers State Bank of Garber, Okla., by reason of said Bank Commissioner's alleged official misconduct, and on the theory that said conduct constituted a breach of his official bond, also seek judgment against the defendant as surety thereon.

The substance of plaintiffs' alleged cause of action may be comprehended from the alleged facts hereinafter related. Their losses consist of a debt in the sum of $32,000 and certificates of deposit in the sum of $62,500, which said amounts the Farmers State Bank owed an account they had in said bank prior to its reorganization and merger with the Garber State Bank on January 7, 1931. The merger and reorganization was effected in accordance with a plan formulated by Bank Commissioner Shull. A part of said plan was a proposal that plaintiffs release their debt of $32,000 against the Farmers State Bank and upon the reduction of the capital stock of said bank to $50,000 that they purchase said stock of the reorganized bank and create a surplus for it in the sum of $12,500 with their $62,500 in certificates of deposit.

It is further alleged that Shull, by or through C. J. Alexander, who was in said Bank Commissioner's office, submitted his plan of merger and reorganization to the plaintiffs in December, 1930, and advised them that when said plan was carried out said Farmers State Bank would be in a sound and solvent condition.

After the merger and reorganization described and while the Farmers State Bank continued to operate as reorganized, Shull had his assistant, Pennington, examine said bank in June, 1931, and February and December of the year 1932. As a result of said examination, Pennington caused loans and discounts aggregating approximately $200,000 to be marked off from the assets of said bank, and after requiring a further reduction of its capital stock, said Bank Examiner took charge of said bank as an insolvent institution.

Plaintiffs' second amended petition contains allegations to the effect that said bank was, and was known by Shull to be, insolvent both before and after its reorganization. It was further alleged that before said reorganization said Bank Commissioner knew that it would still be insolvent after having been reorganized according to his plan.

As we understand plaintiffs' pleading, Shull's wrongful conduct as Bank Commissioner consisted of: (1) Formulating and putting into effect an unlawful plan of reorganizing the Farmers State Bank, whereby he permitted and approved the reduction and issuance of stock in an insolvent bank and induced or caused the plaintiffs to purchase said void and illegally issued stock; to pay into said insolvent bank the sum of $12,500 as surplus, and to release their claim of $32,000 against said bank, with willful intent to defraud them; and (2) making, approving, and promulgating a report of an examination of said bank made by his assistant, J. D. Pennington, which showed a much smaller impairment in the capital of said bank than actually existed, and listed as doubtful assets of said bank $135,000 in unsecured and uncollectible notes that were, and were known by Shull and the examiner to be, worthless; and (3) permitting said bank to operate in an unsafe and insolvent condition.

Before considering the question of whether Shull's alleged wrongful conduct constituted a breach of his bond, the question of whether such a breach entitles the plaintiffs to bring suit on said bond should first be determined. In urging a negative answer to this question, the defendant attempts to invoke the principle that "in the absence of statute, a suit on a bond can be maintained only by the obligee named therein. . . ." See American Surety Company of New York v. Steen, 86 Okla. 252, 208 P. 212; United States F. & G. Co. et al. v. Krow, 184 Okla. 444, 87 P. 2d 950. The plaintiffs do not attempt to contradict the rule asserted, and they recognize that the only obligee named in the bond herein sued on is the State of Oklahoma, but they maintain that there is a statute which (as alleged in their second amended petition) controls the matter in the present instance. The statute referred to is section 95, O. S. 1931 (12 Okla. St. Ann. § 76), which reads as follows:

"When an officer, executor or administrator within this state, by misconduct or neglect of duty, forfeits his bond or renders his sureties liable, any person injured thereby, or who is, by law, entitled to the benefit of the security, may bring an action thereon in his own name, against the officer, executor or administrator and his sureties, to recover the amount to which he may be entitled by reason of the delinquency. . . ."

Counsel for the plaintiffs cite the case of Ahsmuhs v. Bowyer et al., 39 Okla. 376, 135 P. 413, 50 L. R. A. (N. S.) 1060, in support of their position, and opposing counsel attempt to distinguish it from this case on the asserted ground that in that case the plaintiff was one of the persons enumerated in the bond for whose benefit it was given, while here the bond was merely conditioned upon Shull's faithful performance of his duties as Bank Commissioner. This argument is apparently based on the fact that the bond in the Ahsmuhs Case contained a provision that its principal "should promptly pay and deliver to proper persons . . . all money which might come into his hands by virtue of said office . . ."; and is obviously untenable. The bonds in both cases were conditioned upon their principals' faithful performance of their official duties, and in the cited case this court upheld the plaintiff's right to maintain the action, notwithstanding the fact that the obligee of the bond involved was the State of Oklahoma; and in so holding called specific attention to the provision of the above quoted statute that "any person" injured by official misconduct forfeiting an official bond may bring an action thereon, in his own name.

This court has not only held that under the statute in question an action is maintainable on the bond of such a county officer as involved in the above cited case, but has also deemed it applicable to an action on the bond of a state officer. In Western Paving Co. v. Board of Com'rs of Lincoln County et al., 183 Okla. 281, 81 P. 2d 652, the officer specified was the State Treasurer. There is no question but that a State Bank Commissioner is a state and public officer. State ex rel. Taylor v. Cockrell, 27 Okla. 630, 633, 112 P. 1000, 1001; see, also, Williamson-Hal-

sell-Frazier Co. v. State, 68 Okla. 40, 171 P. 453, 454; Riches v. Hadlock, 80 Utah, 265, 15 P. 2d 283; State v. Baldwin, 109 Vt. 143, 194 Atl. 372; Lawrence Trust Co. v. Chase Securities Corp., 292 Mass. 481, 198 N. E. 905.

Under somewhat similar statutes of other states (sec. 75, Rev. Code, Arizona, 1928; sec. 403, Rev. St. of Idaho, 1887) individuals have also been allowed to maintain actions upon the official bonds of such an officer. See Palmer v. Pettingill, 6 Idaho, 346, 55 P. 653, cited in State v. American Surety Co., 26 Idaho, 652, 145 P. 1097; Button et al. v. Nevin, 44 Ariz. 247, 36 P. 2d 568, followed in Baumlisberger et al. v. Dorman, 259 Ky. 37, 81 S. W. 2d 876. While it does not appear in the printed reports of the cited cases, we think it may reasonably be assumed that the plaintiffs in the cited cases were not the obligees named in the bonds involved. Such decisions are in accord with the general rule that "individuals who have suffered loss within the scope of the bond's protection may bring suit on the bond notwithstanding the fact that the state may be named an obligee in the bond." 22 R. C. L. 517, sec. 204. Undoubtedly, the rule applies to official bonds in this jurisdiction under section 95, O. S. 1931, supra.

The rest of the defendant's argument in support of the trial court's judgment sustaining its demurrer may be considered under the contention that the acts complained of in the plaintiffs' second amended petition were not duties required of Shull in his official capacity as Bank Commissioner, and therefore did not constitute a breach of the condition of his bond, namely: that he should "faithfully discharge the duties required of his office by law. * * *" In connection with this contention, the defendant urges the proposition that no law of the State of Oklahoma authorized or required Shull, as State Bank Commissioner, to solicit the plaintiffs' purchase of stock in the Farmers State Bank, either before or after its reorganization, or to make any representations to them as an inducement for said purchase. If Shull's negotiations or oral representations prior to the purchase was the only conduct that is complained of in plaintiffs' pleading, then there might be merit to the assertion that it fails to state a cause of action because of the rule that a surety on an official bond is answerable only for the acts of his principal done by virtue of his office or the performance of the duties required of him in his official capacity. It is unnecessary to decide this question, however, because plaintiffs' amended petition charged Shull with the willful violation of at least one statute prescribing the duties of his office. See, for instance, section 4118, C. O. S. 1921 (sec. 9128, O. S. 1931), which was in force and effect at the time in question. It follows, therefore, that if Shull was guilty of the conduct alleged, the condition of his bond that he would "faithfully discharge the duties required of his office by law" was thereby breached. The plaintiffs are entitled to maintain an action for said breach if their alleged losses were occasioned thereby. As the second amended petition filed by the plaintiffs must be viewed from the standpoint most favorable to them, it cannot be said to be without an allegation of causal connection between the misconduct we have considered and the losses they are alleged to have incurred.

Having found that at least part of Shull's misconduct was sufficient to support the present action, we deem it unnecessary to consider his other allegedly wrongful conduct under the rule that a demurrer to a petition should be overruled if any fact therein stated entitles the plaintiff to any relief. See Schlingman v. Wells, 122 Okla. 275, 254 P. 716.

In accord with the foregoing views, our decision in the present appeal is one of reversal. The trial court is therefore directed to vacate its order and judgment heretofore entered in this cause and to proceed in a manner consistent with the views expressed herein.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. OSBORN, J., dissents.